UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| SHELDON HUELL, an individual,<br><br>  Plaintiff,<br><br>  v.<br><br>BEVMO HOLDINGS, LLC, a Delaware Limited Liability Company; BEVMO GC SERVICES, LLC, a California Limited Liability Company,<br><br>  Defendants. | No. 2:22-cv-01394 WBS AC<br><br>ORDER RE: DEFENDANT'S MOTION TO COMPEL ARBITRATION and PLAINTIFF'S MOTION FOR LEAVE TO AMEND |

----oo0oo----

Plaintiff Sheldon Huell brought this action against his former employer, Bevmo! Inc.,[1] alleging claims for wage discrimination on the basis of race under both California and federal law. (Docket No. 1-2.) Before the court are defendant's motion to compel arbitration (Docket No. 6) and plaintiff's

---

[1] Plaintiff originally sued Bevmo Holdings, LLC and Bevmo GC Services. However, the correct defendant, as plaintiff acknowledges in their motion for leave to amend, is Bevmo!, Inc. Accordingly, the court will use "defendant" in the singular in this order.

1

motion for leave to amend the complaint (Docket No. 8).

I.   Facts & Procedural History

Plaintiff, an African American man, worked for Bevmo! Inc. ("Bevmo") as a cashier and manager at two different locations. (Compl. ¶¶ 2-3.) Plaintiff first worked as a cashier from April 2018 to June 2020 at the Midtown Sacramento Bevmo location. (Compl. ¶ 4.) He earned $12 an hour. (Id. ¶ 7.) In June 2020, plaintiff began working at the Natomas Bevmo location and was made manager. (Id. ¶ 8.) After receiving a 40-cents raise, plaintiff earned $15.40 an hour. (Id.) Plaintiff learned that four other managers, who performed similar work and worked the same hours, earned between $17.50 to $ 19.00 an hour. (Id. ¶ 11.) According to plaintiff, these four managers had "lighter skin tone" and were "white-passing." (Id. ¶ 12.) Human Resources began an investigation after plaintiff inquired about the pay discrepancy. (Id. ¶¶ 13-14.) Plaintiff alleges that he noticed that he was receiving more write-ups and disciplinary actions and being given additional tasks other managers were not asked to do after he raised the pay discrepancy concerns with Human Resources. (Id. ¶ 16.) Plaintiff no longer works for Bevmo.[2] (Id. ¶ 17.)

Plaintiff filed a complaint with the Department of Employment and Fair Housing and received a right-to-sue letter. (Compl. ¶ 18.) On June 21, 2022, plaintiff filed his complaint in California state court. (Docket No. 1-2.) Defendants removed the case to this court on August 5, 2022. (Id.)

---

[2] Plaintiff did not provide any specific information as to when or why his employment with Bevmo ended.

2

On August 8, 2022, defendant requested that plaintiff stipulate to arbitration because he had agreed to arbitrate any disputes against defendant.  (Def.'s Mot. to Compel, at 4 (Docket No. 6-1).)  In order to onboard as an employee at Bevmo, prospective employees must complete the online onboarding process.  (See Chavez Decl. ¶ 7 (Docket No. 6-3).)  One of the documents employees must view and agree to as part of this onboarding process is the Arbitration Agreement ("Agreement").  (Id. ¶ 10.)  Plaintiff electronically signed the Agreement before beginning his employment with Bevmo in April 2018.  (Id. ¶ 4.)  On August 9, 2022, parties met and conferred regarding defendant's request that plaintiff stipulate to arbitration pursuant to the Agreement.  (Id.)  Plaintiff refused to stipulate to arbitration.  (Id.)

On August 30, 2022, plaintiff filed a Claims Notice with the Labor Workforce Development Agency ("LWDA") to include a cause of action under California's Private Attorneys General Act ("PAGA"), Cal. Lab. Code §§ 2698 et seq., for violation of the Equal Pay Act under Cal. Lab. Code § 1197.5.  (Pl.'s Mot. for Leave at 2 (Docket No. 8-1).)  On September 8, 2022, plaintiff's counsel requested defendant's counsel stipulate to amend the complaint so plaintiff could include a PAGA claim.  (Id.)  Defendant's counsel refused.  (Id.)

II.  Motion to Compel Arbitration

    A.  Legal Standard

The Federal Arbitration Act ("FAA") provides that an arbitration clause in a contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in

3

equity for the revocation of any contract." 9 U.S.C. § 2; Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 682 (2010). "The central or primary purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms." Id.

The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985). "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is a construction of the contract language itself or an allegation of waiver, delay, or like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24–25 (1983); see Poublon v. C.H. Robinson Co., 846 F.3d 1251, 1259 (9th Cir. 2017) (same).

Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration. See Cohen v. Wedbush, Noble Cooke, Inc., 841 F.2d 282, 285 (9th Cir. 1988). "[T]he FAA limits courts' involvement to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." Cox v. Ocean View Hotel Corp., 533 F.3d 1114, 1119 (9th Cir. 2008) (internal quotation marks omitted).

    B.    Whether There is a Valid Arbitration Agreement

While plaintiff acknowledges that he electronically

4

signed the Agreement at the outset of his employment, he says the Agreement is not valid because it is unconscionable. (Pl.'s Opp'n at 7 (Docket No.7).) The FAA's "savings clause permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability . . ." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (quotation and citation omitted). "Unconscionability has both a 'procedural' and a 'substantive' element." Armendariz v. Found. Health Psychcare Servs., 24 Cal. 4th 83, 114 (2000). "Both [must] be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." Id. However, "they need not be present in the same degree." OTO, LLC v. Kho, 8 Cal. 5th 111, 125 (2019). "A procedural unconscionability analysis begins with an inquiry into whether the contract is one of adhesion." Id. at 126. "A substantive procedural unconscionability analysis examines the fairness of a contract's terms." Id. at 129. The concern is with "terms that are unreasonably favorable to the more powerful party." Id. at 130.

Here, the Agreement was a condition of employment and therefore is a contract of adhesion, see OTO, LLC, 8 Cal. 5th at 126 ("Arbitration contracts imposed as a condition of employment are typically adhesive."). However, because "adhesion establishes only a 'low' degree of procedural unconscionability," Davis v. Kozak, 53 Cal. App. 5th 897, 907 (2020), plaintiff must show high substantive unconscionability. See MacClelland v. Cellco P'ship, -- F. Supp. 3d --, 2022 WL 2390997, at *5 (N.D. Cal. July 1, 2022) ("Since [p]laintiffs have only established a

minimal amount of procedural unconscionability, they must show significant substantive unfairness to avoid arbitration.") (citation omitted); see also Armendariz, 24 Cal. 4th at 114 (explaining that procedural and substantive unconscionability are evaluated on a "sliding scale" and therefore do not need to be "present in the same degree").

Plaintiff concedes that the Agreement meets the minimum level of substantive fairness as articulated in Armendariz.[3] (See Pl.'s Opp'n at 7.) Instead, plaintiff argues the Agreement is substantively unconscionable because it allegedly waives representative claims brought under PAGA. (Id.) While plaintiff does not currently have a PAGA claim, he seeks to amend his complaint to add a PAGA claim for defendant's alleged violation of the Equal Pay Act. (See generally Pl.'s Mot. for Leave.)

"PAGA authorizes any 'aggrieved employee' to initiate an action against a former employer 'on behalf of himself . . . and other current or former employees' to obtain civil penalties" that otherwise can be "recovered only by the State" in an enforcement action brought by California's Labor and Workforce Development Agency (LWDA). Viking River Cruises, Inc. v. Moriana, 142 S. Ct. 1906, 1914 (2022) (quoting Cal. Lab. Code § 2699(a)). "California precedent holds that a PAGA suit is a

---

[3] "An arbitration agreement is lawful if it (1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum." Armendariz, 24 Cal. 4th at 102 (citation and quotation omitted).

6

1  'representative action in which the employee plaintiff sues as an
2  agent or proxy' of the State." Id. (quoting Cal. Lab. Code
3  § 2699(a); Iskanian v. CLS Transp. L.A., LLC, 59 Cal. 4th 348
4  (2014)). PAGA claims are "representative" in two ways: (1) the
5  aggrieved employee who brings a PAGA claim asserts the claim on
6  behalf of the state; and (2) the aggrieved employee may assert
7  claims based on violations "other current or former employees"
8  suffered. See id. at 1916.

         In Viking River Cruises, the United States Supreme Court concluded that the FAA did not preempt California's bar on waivers of employees' ability to represent the state in PAGA actions. See id. at 1924-26. However, it did find the FAA preempted California's rule that "PAGA claims cannot be split into arbitrable individual claims and nonarbitrable 'representative' claims." Id. at 1916. Accordingly, under Viking River Cruises, employees may waive the right to bring PAGA claims that are specifically premised on Labor Code violations they have personally suffered, but "waivers of the right to assert . . . claims [on the state's behalf] under PAGA" remain invalid. MacClelland, 2022 WL 2390997, at *9; see Viking River Cruises, 142 S. Ct. at 1923-26; Shams v. Revature LLC, -- F. Supp. 3d --, 2022 WL 3453068, at *2 (N.D. Cal. Aug. 17, 2022).

         Here, plaintiff contends that the Agreement is substantively unconscionable because it "requires arbitration for 'any representative action,' including an employee's right to bring a PAGA action on behalf of the state." (Pl.'s Opp'n at 9.) The portion of the Agreement addressing representative actions is, in relevant part, as follows:

7

> Bevmo and I agree that the parties may bring only in arbitration any representative action under any statute wherein their rights to bring such representative action are deemed unwaivable (such as the California Private Attorneys General Act of 2004).

(Chavis Decl., Ex. A ("Agreement") at 7 (Docket No. 6-3).).

Representative PAGA claims are not arbitrable. See Viking River Cruises, 142 S. Ct. at 1924-1925 ("The agreement between Viking and Moriana purported to waive 'representative' PAGA claims. Under Iskanian, this provision was invalid if construed as a wholesale waiver of PAGA claims. And under our holding, that aspect of Iskanian is not preempted by the FAA . . . ."); see also Iskanian, 59 Cal. 4th at 386 (describing arbitration as "a dispute between an employer and an employee arising out of their contractual relationship" and a representative PAGA claim as "a dispute between an employer and the state") (emphasis in original).

However, that a provision is unenforceable does not make the arbitration agreement unconscionable. "Under California law, contracts can be contrary to public policy but not unconscionable and vice versa." Poublon, 846 F.3d at 1265 (citation and quotation omitted). "[T]he enforceability of the waiver of a PAGA representative action does not make th[e] provision substantively unconscionable." Id. To find substantive unconscionability, California courts "have held that the agreement must be 'overly harsh,' 'unduly oppressive,' 'unreasonably favorable,' or must 'shock the conscience.'" Id. at 1261 (citing Sanchez v. Valencia Holding Co., LLC, 61 Cal. 4th 899, 911 (2015)).

8

1       Here, plaintiff is correct that the Agreement
2  impermissibly mandates unwaivable representative actions,
3  including PAGA, to be brought "only in arbitration."  (Agreement
4  at 7.)  However, the Agreement is not "'permeated' by
5  unconscionability."  Armendariz, 24 Cal. 4th at 122.  Rather,
6  plaintiff concedes that that the Agreement meets the minimal
7  levels of fairness under California law.  (See Pl.'s Opp'n at 7.)
8  Furthermore, plaintiff cites no authority holding that a
9  provision impermissibly mandating arbitration of unwaivable
10 representative actions is substantively unconscionable.

11      Nevertheless, because the provision is unlawful, the
12 court must determine whether the provision can be severed.[4]
13 "[T]he strong preference is to sever unless the agreement is
14 'permeated' by unconscionability."  Ajamian v. CantorCO2e, L.P.,
15 203 Cal. App. 4th 771, 802 (2012); see also Armendariz, 24 Cal.
16 4th at 122 (explaining that a trial court may "refuse to enforce
17 the entire agreement . . . . only when the agreement is
18 'permeated' by unconscionability").  The provision mandating
19 unwaivable representative actions be brought only in arbitration
20 can be severed "without affecting the remainder of the
21 agreement."[5]  Poublon, 846 F.3d at 1273; cf. Armendariz, 24 Cal.

---

[4]    The Agreement contains a severability clause.  That clause provides in part:
>   This Agreement shall be self-amending; meaning if by law or common law a provision is deemed unlawful or unenforceable that provision and the Agreement automatically, immediately and retroactively shall be amended, modified, and/or altered to be enforceable.

(Agreement at 7.)

[5]    Plaintiff cites two cases to support his argument that the unenforceable provision renders the Agreement unconscionable.

4th at 125 (finding severability inapplicable where the arbitration agreement had multiple unlawful provisions and "there [wa]s no single provision [the] court c[ould] strike or restrict in order to remove the unconscionable taint from the agreement"). The court therefore finds the Agreement is valid when the unenforceable provision requiring arbitration of representative PAGA claims is severed from the provisions of the Agreement as they pertain to arbitration of other claims.

     C.   <u>Whether the Arbitration Agreement Encompasses Claims</u>

The Agreement covers "[a]ny legally-cognizable controversy or claim arising out of or relating to [plaintiff's] employment or termination of employment (including any post-termination claim)." (Agreement at 6.) Plaintiff's claims of wage discrimination on the basis of race under various federal and California statutes all arise out of his employment with Bevmo. (Compl. ¶¶ 19-37.) The Agreement thus encompasses all of plaintiff's claims. Accordingly, the court will grant defendants' motion to compel arbitration as to all of plaintiff's claims.

III. <u>Motion for Leave to Amend</u>

Plaintiff seeks leave to amend for two purposes: (1) to

---

However, both cases weigh against plaintiff's position. See Holman v. Bath & Body Works, LLC, No. 1:20-cv-01603 NONE SAB, 2021 WL 5826468, at *22 (E.D. Cal. Dec. 8, 2021) (finding the PAGA waiver and arbitration provision severable); Harper v. Charter Communications, LLC, 2:19-cv-00902 WBS, 2022 WL 4095889, at *4 (E.D. Cal. Sep. 7, 2022) (finding that because the severability clause exempted the "representative . . . action waiver" from severance, the arbitration agreement did not require arbitration of plaintiff's PAGA claims).

10

correct the name of defendant Bevmo! Inc.;[6] and (2) to add a claim under PAGA. (Pl.'s Mot. for Leave at 1.)

A. Legal Standard

Under Federal Rule of Civil Procedure 15(a), a party may amend its pleading with the court's leave, which should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "[R]equests for leave should be granted with 'extreme liberality.'" Moss v. U.S. Secret Serv., 572 F.3d 962, 972 (9th Cir. 2009) (citation omitted). Leave "should be granted unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay." Johnson v. Mammoth Recreations, 975 F.2d 604, 607 (9th Cir. 1992).

B. Discussion

Defendant opposes plaintiff's motion for leave to add a PAGA claim because, among other arguments, it is futile and would prejudice defendant. (Def.'s Opp'n at 1.)

1. Futility

"An amendment is futile when 'no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.'" Missouri ex rel. Koster v. Harris, 847 F.3d 646, 656 (9th Cir. 2017) (citation omitted). "A defendant bears the burden of establishing that a proposed amendment is futile . . . ." Nguyen v. Thermo Fisher Sci., Inc., 18-cv-6728 DMG (JCx), 2019 WL 13039947, at *1 (C.D.

---

[6] As mentioned at the outset of this order, plaintiff mistakenly sued Bevmo! Inc. as Bevmo Holdings, LLC and Bevmo GC Services, LLC. (Pl.'s Mot. for Leave at 1.) Defendant does not challenge amending the complaint for this purpose.

Cal. Mar. 21, 2019) (citation omitted).

Before commencing a PAGA action, a plaintiff must complete various administrative requirements with the Labor and Workforce Development Agency ("LWDA"). See, e.g., Cal. Lab. Code § 2699.3(a)(1)(A) (requiring plaintiff notify the LWDA and employer of the Labor Code violations and supporting facts); Id. § 2699.3(a)(2)(A) (requiring plaintiff wait until either the LWDA responds to the notice or 65 days elapses). The "dual purpose" of § 2699.3's notice requirements is to "provid[e] the LWDA with an initial opportunity to investigate . . . and giv[e] employers, in certain instances, an opportunity to cure the alleged violations." Hoang v. Vinh Phat Supermarket, Inc., No. 2:13-cv-00724 WBS, 2013 WL 4095042, at *7 (E.D. Cal. Aug. 13, 2013) (citing Cal. Lab. Code § 2699.3(a),(c)) (other citations omitted).

Defendant argues that amendment would be futile because plaintiff failed to provide adequate notice under Cal. Lab. Code § 2699.3(a). (Def.'s Opp'n at 5-7.) Plaintiff concedes that he did not provide notice by certified mail and did not wait 65 days before seeking to commence a PAGA claim as required by Cal. Lab. Code § 2699.3. (Pl.'s Mot. for Leave at 5.) However, numerous courts have "excused strict compliance" with these administrative requirements where the purposes of the requirements were not undermined. See, e.g., Magadia v. Wal-Mart Assocs., 319 F. Supp. 3d, 1180, 1188 (N.D. Cal. 2018) (finding plaintiff's failure to "exhaust his administrative remedies before filing suit . . . does not bar [p]laintiff's PAGA claim"); Hoang, 2013 WL 4095042, at *7 ("[T]here is no indication that plaintiff's notice . . .

12

precluded the LWDA from performing its administrative function. Nor did the late notice deprive [employer] of the opportunity to cure."); Bradescu v. Hillstone Rest. Group, Inc., No. SACV 13-1289 GW, 2014 WL 5312546, at *10 (C.D. Cal. Sept. 18, 2014) ("[T]he [c]ourt sees little reason to punish [plaintiff] for acting too quickly . . .").

Even where courts have dismissed PAGA claims for failing to comply with the administrative requirements, they have granted leave to amend. See, e.g., Machado v. M.A.T. & Sons Landscape, Inc., No. 2:09-cv-00459 JAM, 2009 WL 2230788, at *3-4 (E.D. Cal. July 23, 2009) (granting leave to amend so plaintiff could properly bring his PAGA claim as a representative action); Jeske v. Maxim Healthcare Servs., Inc., No. CV F 11-1838 LJO, 2012 WL 78242, at *13 (E.D. Cal. Jan. 10, 2012) (granting leave to amend so plaintiff could define aggrieved employees); Chie v. Reed Elsevier, Inc., No. C-11-1784, 2011 WL 3879495, at *4-5 (N.D. Cal. Sept. 2, 2011) (granting leave to amend so plaintiff could provide a description of the aggrieved employees). Because plaintiff might be able to show that he has either cured the administrative failures or that any existing administrative failures do not undermine the purpose of Cal. Lab. Code § 2699.3, the court finds amendment would not be futile.

2. Prejudice

Defendant also argues granting plaintiff leave to amend to add a PAGA claim would prejudice defendant doing so would force defendant to incur the costs of filing another motion to compel arbitration. However, the costs of presenting another motion to compel arbitration will for all practical purposes be

*de minimis* when compared to the total costs of defending this action, and defendant cites no authority to support the proposition that incurring additional filing costs amounts to a sufficient showing of prejudice for the court to deny plaintiff's motion for leave to amend.

IT IS THEREFORE ORDERED that defendants' motion to compel arbitration (Docket No. 6) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that plaintiff's motion for leave to amend (Docket No. 8-1) be, and the same hereby is GRANTED. Plaintiff shall file said amended complaint within fourteen days from the date this Order is filed.[7]

Dated: November 15, 2022

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[7] The court expresses no opinion in this Order as to whether plaintiff would lack standing to maintain his non-individual PAGA claims if his individual PAGA claim is compelled to arbitration. See Viking River Cruises, 142 S.Ct. at 1925 ("When an employee's own dispute is pared away from a PAGA action, the employee is no different from a member of the general public, and PAGA does not allow such persons to maintain suit.") (citation omitted).